UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELMER L. O'CONNELL, | ) No. CV-08-123-CI |
| Petitioner, | ) |
| | ) REPORT AND RECOMMENDATION |
| v. | ) TO GRANT RESPONDENT'S |
| | ) MOTION TO DISMISS ALL |
| JEFF UTTECH, | ) CLAIMS WITH PREJUDICE |
| | ) |
| Respondent. | ) |
| | ) |

BEFORE THE COURT on Report and Recommendation is Respondent's Answer and Memorandum of Authorities, which the court construes as a Motion to Dismiss under Rule 8, RULES GOVERNING § 2244 CASES.[1]  (Ct. Rec. 12, 18.) Petitioner, who is proceeding pro se, is currently imprisoned at the Washington State Penitentiary in Walla Wall, Washington; Assistant Attorney General Ronda D. Larson represents Respondent.   The parties have not consented to proceed before a magistrate judge.

**FACTS**

Petitioner is in the custody of the Washington State Department of Corrections under a 2001 jury conviction for first degree robbery

---

[1]  Also before the court is Petitioner's "Traverse Evidentiary Hearing Requested" which the court construes as a Reply. (Ct. Rec. 15.)

REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S
MOTION TO DISMISS ALL CLAIMS WITH PREJUDICE - 1

and attempt to elude a police vehicle, committed on April 21, 2001.
(Ct Rec. 13, Exhibit 1.)[2]  The trial court (Spokane County Superior
Court Judge Maryann Moreno) sentenced Petitioner to life without
possibility of release under the State's habitual offender statute.
(Exhibit 17.)   Attorney Richard Fasy represented Petitioner
throughout his trial.

The facts were summarized by the state court of appeals:

Late one night in April 2001, Mr. O'Connell assaulted
a woman acquaintance, pushed her out of her car, and drove
off in her car with her purse.  Relevant to these facts,
he was later arrested and charged with first degree
robbery and attempt to elude.[1]  RCW 9A.56.190; RCW
46.61.024.

At trial, defense counsel argued that Mr. O'Connell
did not have the ability to form the intent to commit
first degree robbery on the night of the incident because
he had been very intoxicated and had been abusing
methamphetamine and crack cocaine for several days.  The
victim testified that Mr. O'Connell had appeared very
agitated that night and made frequent, prolonged trips to
the bathroom (suggesting drug use), but she did not think
he appeared intoxicated.   The defense offered the
testimony of Dr. Scott Mabee, a psychologist, who stated
that Mr. O'Connell was likely intoxicated at the time of
the incident, due to his high level of drug dependency and
his low level of mental functioning.  Noting that Mr.
O'Connell reported daily drug use for the past three
years, Dr. Mabee opined that Mr. O'Connell had diminished
mental processes due to substance intoxication.

The jury found Mr. O'Connell guilty as charged. He
was sentenced for these convictions as well as for the
second degree robbery and related eluding convictions from
another trial. *See* note 1.  Because first degree robbery
is a most serious offense (former RCW 9.94A.030(25)(a);
former RCW 9A.56.200), and because he had been convicted
on two previous occasions of most serious offenses, the
trial court imposed a life sentence without possibility of
early release.

---

[2]  References to Exhibits in the State Court Record (Ct. Rec.
18) are cited to as "Exhibit ___."  The record is available in paper
format at the U.S. District Court Clerk's Office.

REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S
MOTION TO DISMISS ALL CLAIMS WITH PREJUDICE - 2

Mr. O'Connell appealed his judgment and sentence to this court, which reversed the counts for second degree robbery and the related charge of eluding. *State v. O'Connell*, noted at 116 Wn. App. 1010 (2003). In June 2003, the sentencing court mistakenly resentenced Mr. O'Connell using an offender score that included the eluding conviction that was related to the dismissed second degree robbery conviction. On November 5, 2004, he was resentenced to life without the possibility of release. He filed an appeal of this judgment and sentence three days later. His personal restraint petition was filed on July 5, 2006.

[1]Mr. O'Connell was charged in the same information with four additional counts related to an earlier purse snatching and a later robbery. A separate trial was held on the purse snatching counts, and a jury found him guilty of second degree robbery and eluding. The remaining two counts were dismissed. This court reversed the second degree robbery and related eluding convictions in *State v. O'Connell*, noted at 116 Wn. App. 1010 (2003).

(Exhibit 3 at 2-4.)

## PROCEDURAL HISTORY

Petitioner, through appellate counsel, timely appealed his amended judgment and sentence to the Washington State Court of Appeals (Court of Appeals). (Exhibit 4.) Petitioner also filed a pro se Statement of Additional Grounds in support of his direct appeal. (Exhibit 6.) While the direct appeal was pending, he filed a pro se personal restraint petition (PRP) with the Court of Appeals, which consolidated the direct appeal and the PRP. Both were denied in a published opinion. (Exhibit 3.) Thereafter, he petitioned the Washington State Supreme Court for discretionary review. (Exhibit 11.) Review was denied and the Court of Appeals issued its mandate on February 28, 2008. (Exhibit 13.) Petitioner filed this federal Petition for Writ of Habeas Corpus on April 14, 2008. (Ct. Rec. 1, 5.)

### FEDERAL HABEAS CLAIMS

Petitioner seeks federal habeas relief on grounds that he received ineffective assistance of counsel due to counsel's (a) failure to request a lesser included offense instruction regarding the robbery count; (b) failure to request a lesser included offense instruction regarding the attempt to elude count; (c) request for a voluntary intoxication instruction not supported by the evidence; and (d) failure to interview and call defense witnesses. (Ct. Rec. 2 at 5.)   Petitioner also claims the cumulative effect of these errors deprived him of a fair trial.  (Ct. Rec. 2 at 32.)

### EXHAUSTION OF STATE REMEDIES

Petitioner exhausted his claims in state court within the meaning of 28 U.S.C. § 2254(b).

### EVIDENTIARY HEARING

Petitioner argues an evidentiary hearing is required on all of his federal habeas claims.  (Ct. Rec. 2, 15.)  State court findings are presumed correct in federal habeas proceedings.  28 U.S.C. § 2254 (e)(1).  If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court may not hold an evidentiary hearing on the claim unless the applicant shows:

(A) the claim relies on:

(I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).   A hearing is not required if the claim presents a purely legal question, or if the claim may be resolved by reference to the state court record.  *Campbell v. Wood*, 18 F.3d 662, 667 (9ᵗʰ Cir. 1994), *cert denied*, 511 U.S. 1119 (1994).  Petitioner's PRP in the state court record and his Reply include exhibits in support of his claims.  (Exhibit 8, Ct. Rec. 15.)  The state record is adequate to review Petitioner's allegations of ineffectiveness of counsel and cumulative error.   Accordingly, Petitioner is not entitled to an evidentiary hearing in federal court.  *Baja v. Ducharme,* 187 F.3d 1075, 1077-78 (9ᵗʰ Cir. 1999), *cert. denied*, 528 U.S. 1079 (2000).

**STANDARD OF REVIEW**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA), federal habeas relief from a state court judgment will be granted when a petitioner demonstrates the state court's adjudication of the claim on its merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d); in other words, if it applied a legal rule which contradicts a prior United States Supreme Court holding.  *Ramdass v. Angelone*, 530 U.S. 156, 165 (2000) (*citing Williams v. Taylor*, 529 U.S. 362 (2000)).  Relief is also appropriate "if, under clearly established federal law, a state court has been unreasonable in applying the governing legal principle to the facts of the case."  *Id.*

In *Williams*, 529 U.S. at 379, the Court announced the "clearly established federal law" standard of § 2254(d)(1) is the equivalent

of the "old rule" standard under *Teague v. Lane*:

> In *Teague v. Lane*, 489 U.S. 288 (1989), we held that the petitioner was not entitled to federal habeas relief because he was relying on a rule of federal law that had not been announced until after his state conviction became final. The anti-retroactivity rule recognized in *Teague*, which prohibits reliance on "new rules," is the functional equivalent of a statutory provision commanding exclusive reliance on "clearly established law." Because there is no reason to believe that Congress intended to require federal courts to ask both whether a rule sought on habeas is "new" under *Teague* – which remains the law -- and also whether it is "clearly established" under AEDPA, it seems safe to assume that Congress had congruent concepts in mind. It is perfectly clear that AEDPA codifies *Teague* to the extent that *Teague* requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the state conviction became final.

The Court further observed a rule is "old" or, in other words, a law is clearly established under *Teague*, if it was "dictated by precedent existing at the time the defendant's conviction became final." *Williams*, 529 U.S. at 381 *(citing Teague*, 489 U.S. at 301). In contrast, a rule that "breaks new ground or imposes a new obligation on the States or the Federal Government," is a "new rule," and in this context, would not be a "clearly established" law. *Williams* confirmed the principle that "apart from the Supreme Court, federal habeas courts ought not act as innovators in the field of criminal procedure, thereby upsetting state convictions because state courts were not prescient and thus failed to comply with federal law that did not exist at the time they ruled." *O'Brien v. Dubois*, 145 F.3d 16, 23 (1st Cir. 1998) (*overruled on other grounds by McCambridge v. Hall,* 303 F.3d 24 (1st Cir. 2002). Thus, under § 2254(d)(1), the threshold question for a reviewing court is whether the rule of law a petitioner seeks to apply "was clearly established at the time his state court conviction became

final." *Williams*, 529 U.S. at 390.  If the rule of law was clearly established, then the court next determines whether the state court's decision was either "contrary to or involved an unreasonable application of" that rule of law.  *Id.* at 391; *see also Baker v. City of Blaine*, 221 F.3d 1108, 1110 n.2 (9th Cir. 2000) (addressing unreasonable application prong).

The Supreme Court has held the clauses "contrary to" and "unreasonable application of" have independent meaning. *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Williams,* 529 U.S. at 404. Therefore, the first prong under § 2254(d) requires a two-step analysis.

Under the "contrary to" clause, a state court's decision must be "substantially different from the relevant precedent" of the Supreme Court before a federal habeas court can grant relief. *Williams*, 529 U.S. at 405.  A state court decision will be contrary to clearly established Supreme Court precedent if the state court applies a rule of law that contradicts the established Supreme Court rule, or fails to arrive at the same result as clearly established Supreme Court precedent in a case with materially identical facts. *Id.*  The "unreasonable application" prong is determined, not by reference to a "reasonable jurist" standard, but by analyzing the question of whether the application was "objectively unreasonable" (as opposed to an incorrect or erroneous application). *Id.* at 409.

The role of circuit law in the federal habeas review process is limited.  A federal district court may use similar cases from the Ninth Circuit and other circuits to help determine whether Supreme Court law on a particular subject is "clearly established" and whether a state court decision is within the scope of "reasonable"

applications of Supreme Court law, but a federal district court cannot overturn a state court decision on habeas review because of a conflict with circuit law. *Van Tran v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000), *cert. denied,* 531 U.S. 944 (2000), (*overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

State courts are not required to cite Supreme Court law or even be aware of an applicable Supreme Court case, so long as neither the reasoning nor the result of the state court decision contradicts that law. *Early v. Packer*, 537 U.S. 3, 8 (2003).  The last reasoned decision of the state court is the opinion which is reviewed. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).

### CLAIM ONE:   INEFFECTIVE ASSISTANCE OF COUNSEL

Plaintiff asserts his counsel was ineffective at trial, specifying four factual bases for this claim: (1) trial counsel did not request a lesser included offense jury instruction for the robbery charge; (2) trial counsel did not request a lesser included offense jury instruction for the attempt to elude charge; (3) trial counsel erroneously requested a voluntary intoxication jury instruction that was not supported by the evidence; and (4) trial counsel failed to interview and call defense witnesses who would have corroborated the defense theory of diminished capacity.  (Ct. Rec. 1, 5.)

In addressing the ineffective assistance of counsel issue, the Court of Appeals stated the following:

> In his personal restraint petition, Mr. O'Connell contends he had ineffective assistance of trial counsel. He argues that defense counsel (1) failed to investigate, interview, or call witnesses crucial to his defense; (2) requested an instruction on voluntary intoxication that

was not supported by the evidence; and (3) failed to request lesser included instructions.

Because effective assistance of counsel in criminal proceedings is guaranteed by the sixth amendment of the United States Constitution and article I, section 22 of the Washington State Constitution, Mr. O'Connell raises a constitutional challenge in his collateral attack. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72 (2004). Accordingly, he must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the error. *Id.* To prove ineffective assistance of counsel, he must first show that defense counsel's representation fell below an objective standard of reasonableness. *Id.* at 672. Second, he must show that his deficient representation actually prejudiced him. *Id.* at 672-73. Failure to establish either one of these tests defeats his claim. *Id.* at 673. Judicial scrutiny of counsel's performance is highly deferential because there is a strong presumption of effectiveness. *Id.* at 721.

(Exhibit 3, 9-10.) (Parallel citations omitted.)

The question, under the standard of the AEDPA, is whether the state court's analysis of the ineffective assistance of counsel claims was contrary to or an unreasonable application of established law as determined by the Supreme Court law. 28 U.S.C. § 2254(d)(1). The standard for effective assistance of counsel as enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), is "clearly established" Supreme Court law. *Williams,* 529 U.S. at 391. In *Strickland*, the Court held that to prove a claim of ineffective assistance of counsel, a petitioner must show that (1) defense counsel's representation fell below an objective standard of reasonableness based on consideration of all the circumstances, and (2) defense counsel's deficient representation prejudiced the defendant, "*i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A counsel's deficient performance must be so serious "that counsel was not

REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S
MOTION TO DISMISS ALL CLAIMS WITH PREJUDICE - 9

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and so serious as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  In assessing Petitioner's ineffective assistance claim, the court need not assess counsel's performance before examining the prejudice suffered.  *Id.* at 697.  If the ineffectiveness claim can be addressed due to lack of sufficient prejudice, "that course should be followed."  *Id.*

Claims of ineffective assistance of counsel are mixed questions of law and fact.  *See Dubria v. Smith*, 224 F.3d 995, 1000 (2000).  If this court determines error has occurred, the harmless error analysis under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), need not be conducted, because "[t]he *Strickland* prejudice analysis is complete in itself; there is no place for an additional harmless error review." *Jackson v. Calderon*, 211 F.3d 1148, 1154 n.2 (9th Cir. 2000), *cert. denied.*, 531 U.S. 1072 (2001).

In this case, the Court of Appeals relied on *In re Pers.* *Restraint of Davis*, 152 Wn.2d 647, 101 P.3d 1 (2004), as the legal standard in its analysis for determining ineffective assistance of counsel.  (Ex. 3 at 10, 12, 17.)  In *Davis,* the Washington State Supreme Court thoroughly discussed the constitutional right to effective assistance of counsel and applied the two-prong test announced in *Strickland. Davis*, 152 Wn.2d at 672-73 (*quoting Strickland*, 466 U.S. at 694).  There is no dispute the state court relied on the *Strickland v. Washington* standard as applied *In re Davis,* in its determinations regarding Petitioner's claim of ineffective assistance of counsel.  For purposes of § 2254(d)(1), the state court applied clearly established Supreme Court precedent. *See Early*, 537 U.S. at 8.

A.    **Factual Predicate One and Two**

Petitioner first contends his trial counsel was ineffective because he did not request jury instructions for first degree theft as a lesser included offense of first degree robbery and a jury instruction for reckless driving as a lesser included offense of attempting to elude a police vehicle.  (Ct. Rec. 2 at 2.)

The Court of Appeals applied established state law in its analysis of the lesser included offense instructions and found the evidence did not support either lesser offense.  The appellate court analyzed the issue as follows:

> Finally Mr. O'Connell contends trial counsel unreasonably failed to request instructions on lesser included offenses.  It is true that a defendant has a right to have lesser included offenses presented to the jury.  RCW 10.61.006; *State v. Stevens*, 158 Wn.2d 304, 310 (2006).  A lesser included offense instruction is justified if (1) all the elements of the lesser offense are necessary elements of the charged offense (the legal prong), and (2) the evidence supports an inference that the lesser crime was committed (the factual prong).  *Stevens*, 158 Wn.2d at 310.  To prove ineffective assistance of counsel, Mr. O'Connell must show that trial counsel unreasonably and prejudicially pursued an "all or nothing" defense against the charged crimes rather than propose lesser included instructions.  *Compare State v. Ward*, 125 Wn. App. 243, 250 (2004) (all or noting defense unreasonable when it exposes the defendant to an unreasonable risk that the jury will convict on the only option presented) *with State v. Hoffman*, 116 Wn.2d 51, 112-13 (1991) (foregoing a lesser included offense instruction may be a legitimate trial strategy).
>
> Mr. O'Connell argues that defense counsel should have proposed an instruction on first degree theft as a lesser included offense of first degree robbery.  First degree theft is defined as wrongfully taking property or services from the person of another with intent to deprive him or her of such property or services.  RCW 9A.56.020(1)(a), .030.  A person commits first degree robbery when he or she "unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence or fear of injury to that person."  RCW 9A.56.190.  "Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the

REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S
MOTION TO DISMISS ALL CLAIMS WITH PREJUDICE - 11

taking." *Id*. Any force or threat, even slight, is sufficient to sustain a robbery conviction. *State v. Handburgh*, 119 Wn.2d 284, 293 (1992).

Although Mr. O'Connell contends he was entitled to instruct the jury on first degree theft, the record does not support the factual prong of this lesser included offense. His victim testified that Mr. O'Connell threatened to rape and kill her, fought with her, pushed her out of her car, and then hit her arm when he backed up the car. Even if the defense had been successful in discrediting her testimony, an officer testified that she had obvious injuries. Because the record shows both use and threatened use of violence, first degree theft is not a justified lesser included offense. Trial counsel's failure to propose such an instruction was a legitimate trial strategy and was not prejudicial. *State v. King*, 24 Wn.App 495, 498-99 (1979).

Finally Mr. O'Connell contends trial counsel should have proposed an instruction on reckless driving as a lesser included offense of attempt to elude a police vehicle. Former RCW 46.61.024 (1983), the attempt to elude statute, states that "[a]ny driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony." Reckless driving, a misdemeanor, involves driving a vehicle in "willful or wanton disregard for the safety of persons or property." RCW 46.61.500(1). Both statutes require a willful or wanton disregard for the safety of others. Thus, it is impossible to violate the eluding statute without violating the reckless driving statute, and reckless driving is a lesser included offense of eluding. *See State v. Parker*, 102 Wn.2d 161, 164-65 (1984)(discussing former RCW 46.61.024 (1979)).

Additional mental elements for attempt to elude, however, are willful failure to stop and attempting to elude a pursuing police vehicle. RCW 46.61.024; *Parker*, 102 Wn.2d at 165. Mr. O'Connell offered no evidence at trial to rebut the State's evidence that he began speeding when the marked police car that first followed him turned on its lights. Eventually, more than one police vehicle pursued him. An officer testified that Mr. O'Connell reached speeds of 70 to 80 miles per hour as he swerved around corners and drove west on Sprague Avenue toward downtown Spokane. Considering the strength of this unrebutted evidence for refusal to stop, the record does not support the factual prong for a lesser included offense instruction on reckless driving. *Stevens*, 158

Wn.2d at 310. Accordingly, defense counsel's failure to propose such an instruction was neither unreasonable nor prejudicial. *Davis*, 152 Wn.2d at 673.

(Exhibit 3 at 14-17.) (Parallel citations omitted.)

In his argument that he was entitled to lesser included instructions, Petitioner mistakenly relies on *Beck v. Alabama*, 447 U.S. 625 (1980). Although it is clearly established federal law that a defendant is entitled to an instruction on a lesser-included offense in a capital case, *Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Beck*, 447 U.S. at 628, it is not "clearly established" Supreme Court law that due process requires giving a lesser included instruction in non-capital cases. *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000). Petitioner's case is a non-capital case. Under Ninth Circuit law, the failure to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional question. *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998). Therefore, Petitioner is not entitled to habeas relief for his ineffective assistance of counsel claims based on failure to request jury instructions on lesser included offenses.[3]

---

[3] Petitioner also relies on *Keeble v. United States*, 412 U.S. 205 (1973). (Ct. Rec. 2 at 2.) This reliance is misplaced. *Keeble* challenged the denial of a lesser included jury instruction in the prosecution of a federal crime under the Major Crimes Act of 1885; it was not a federal habeas case. Further, under the federal rule applied in claims for habeas relief in capital cases, a defendant is entitled to a lesser included offense only if the facts so warrant. *Id.* at 208. Even if habeas relief were available in this case, the evidence does not warrant a lesser included instruction. The record

1    Accordingly, **IT IS RECOMMENDED**, habeas relief based on counsel's

2    failure to request lesser included offense jury instructions be

3    **DENIED.**

4    **B.    Factual Predicate Three - Voluntary Intoxication Instruction**

5        Petitioner next contends his counsel's request for a voluntary

6    intoxication jury instruction was prejudicial error that confused

7    the jury and affected the outcome of the trial.  He asserts there

8    was no factual basis for the instruction, and it conflicted with his

9    defense theory of diminished capacity.   (Ct. Rec. 2 at 11-20.)

10       The appellate court rejected this argument, reasoning as

11   follows:

> Defense counsel argued that Mr. O'Connell was either
> intoxicated on the night of the incident or was
> incapacitated due to long-term drug abuse.  Mr. O'Connell
> now contends this defense was confusing and the jury could
> have thrown out the diminished capacity defense if it did
> not believe he was intoxicated.   The record simply does
> not indicate that these two aspects of the defense based
> on lack of intent were difficult to separate.
>
> Voluntary intoxication is a subset of the general
> defense of diminished capacity.  *State v. Eakins*, 127
> Wn.2d 490, 498 (1995).  The defense is effective when the
> defendant can show that the crime charged has as an
> element a particular mental state, that he or she had been
> drinking or consuming drugs, and that the consumption
> affected his ability to acquire the required mental state.
> *State v. Gabryschak*, 83 Wn.App. 249, 252 (1996).  To show
> diminished capacity, the defendant must produce expert
> testimony demonstrating he or she suffered from a mental
> condition that impaired his or her ability to form the
> requisite specific intent.   *State v. Turner*, 143 Wn.2d
> 715, 730 (2001); *Eakins*, 127 Wn.2d at 502.  As noted by

_____

24   includes unrebutted evidence of the infliction of bodily harm in the

25   commission of theft, a refusal to stop when so instructed by the

26   police, and driving in a manner indicating wanton and willful

27   disregard for the lives of others while attempting to elude police.

28   *Hopper*, 456 U.S. at 611-12.

REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S
MOTION TO DISMISS ALL CLAIMS WITH PREJUDICE - 14

> the State, the jury could have rejected the diminished capacity defense due to the lack of a mental condition, yet could have accepted the witnesses' testimony that Mr. O'Connell was intoxicated at the time of the incident. Defense counsel discussed both theories in closing argument, and the jury addressed separate instructions on the defenses.  Mr. O'Connell shows neither an unreasonable defense strategy nor prejudice.

(Exhibit 3 at 13-14.)

To challenge a jury instruction on habeas, the defendant must prove "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (*quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  The instruction must be viewed in the context of the entire trial and the jury instructions taken as a whole.  *Id.; see also Strickland,* 466 U.S. at 685 (counsel error must result in unfair trial to violate due process).

Here, the appellate court found that under state law, voluntary intoxication is a subset of the diminished capacity defense. (Exhibit 3 at 13.)  This court has no authority to review a state court's application of its own laws. *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990).  The appellate court determined the instruction was reasonable and correct in defining the two aspects of the defense: mental condition and voluntary intoxication.  The jury was instructed that evidence of intoxication "may be considered in determining whether the defendant acted with the intent to commit the crimes [charged]."  (Exhibit 15 at 191.)  It was not an unreasonable strategy for defense counsel to propose two possible bases for lack of intent.  Under the instructions given by the trial court, Petitioner was able to argue fully that he did not have the requisite mental state to commit either crime.  The instruction as

REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S
MOTION TO DISMISS ALL CLAIMS WITH PREJUDICE - 15

given did not create fundamental unfairness by denying Petitioner an opportunity to present his theory of the case to the jury. Because there is no showing of a due process violation, the claim is not cognizable on federal habeas review. *See Beardslee v. Woodford,* 358 F.3d 560, 578 (9th Cir. 2004), *cert. denied,* 543 U.S. 842 (2004); *Solis v. Garcia,* 219 F.3d 922, 927 (9th Cir. 2000), *cert. denied*, 534 U.S. 839 (2001); *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984), *cert. denied*, 469 U.S. 838 (1984) (habeas relief unavailable unless contested jury instruction, viewed in context of entire trial, denied due process).

Petitioner's argument that there is no factual basis for the voluntary intoxication jury instruction is without merit. The victim testified Petitioner used crack cocaine and was acting unusually agitated and demanding money the night of the crime. (Exhibit 15 at 53.) The witness who helped the victim immediately after the crime, testified the victim stated her assailant was on crack that night. (*Id*. at 101.) Petitioner's medical expert testified that Petitioner reported he was using methamphetamine, crack and alcohol at the time of the crime. (*Id*. at 114.) Evidence submitted by Petitioner with his PRP also shows Petitioner was intoxicated the night of the crime. (Exhibit 8, Appendix C, *Affidavit of Elmer O'Connell, Sr.*) The appellate court reasonably found there was sufficient evidence favorable to the State to establish beyond a reasonable doubt the essential elements of first degree robbery and attempting to elude a police vehicle, including intent. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (habeas relief unavailable if, viewing the record in light most favorable to the State, any rational trier of fact could have found the essential

REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S
MOTION TO DISMISS ALL CLAIMS WITH PREJUDICE - 16

elements of the crimes charged).  Further, Petitioner's argument that the instruction could have confused the jury is speculation. There is no evidence in the record to indicate the instruction on voluntary intoxication was erroneous.  There is no evidence in the record that creates an inference of jury confusion.  *Beardslee*, 358 F.3d at 575.  Petitioner has not shown "'a reasonable likelihood that the jury . . . applied the challenged instruction in a way' that violated the Constitution."  *Solis*, 219 F.3d at 927 (*quoting Estelle*, 502 U.S. at 72).

Because there was evidence of intoxication, as found by the state court, and no evidence that the jury misapplied the instruction, Petitioner failed to establish prejudice resulting from the voluntary intoxication instruction.  Further, it was reasonable for counsel to argue two bases for diminished capacity.  The appellate court reasonably found no prejudice was shown; therefore, there is no constitutional violation.  *Strickland,* 466 U.S. at 697. **IT IS RECOMMENDED** habeas relief based on counsel's request for a voluntary intoxication instruction be **DENIED**.

**C.    Factual Predicate Four - Failure to Interview and Call Witnesses**

Petitioner next claims trial counsel did not sufficiently interview defense witnesses or call them during trial.  He claims his counsel should have presented testimony from three people who would have provided evidence to support his defense theory.  (Ct. Rec. 2 at 20.)

The appellate court considered affidavits submitted by Petitioner's family and friends in support of Petitioner's PRP claim that defense counsel did not conduct a reasonable investigation.

1  (Exhibit 3 at 12-13; Exhibit 8, Appendices A-F; Ct. Rec. 15,

2  Exhibits A, B, C.)  The appellate court stated:

3           Mr. O'Connell admitted that he had taken his
    acquaintance's car, but claimed that he lacked the intent
4   to rob her or to elude police because of diminished
    capacity and/or voluntary intoxication.  The affidavits he
5   presents are from family members and friends who allege
    that trial counsel would not return their calls and that
6   they wanted to testify that Mr. O'Connell was a nice man
    who would not hurt or steal from anyone.  His father
7   declared that Mr. O'Connell was intoxicated on the night
    of the incident, a defense Mr. O'Connell is now rejecting.
8   Considering the reasonable defense of incapacity chosen by
    trial counsel, the testimony of these witnesses would not
9   have been necessary or particularly helpful.  Even if
    these prospective witnesses could have described the state
10  of Mr. O'Connell's mind at the time of the incident, their
    testimony would have been redundant.  Both defense and
11  State witnesses testified that Mr. O'Connell appeared
    agitated, spent long periods of time in the bathroom, and
12  had a history of drug abuse.  Further, if the family
    members and friends testified as to his good character,
13  the prosecutor could have cross-examined them regarding
    their knowledge of his extensive criminal history.  *State
14  v. Lord*, 117 Wn.2d 829, 891-92 (1991).  Mr. O'Connell
    fails to show that trial counsel's investigation was
15  inadequate or that it prejudiced his defense.

16  (Exhibit 3 at 12-13.)

17       It is well established "counsel has a duty to make reasonable

18  investigations or to make a reasonable decision that makes

19  particular investigations unnecessary." *Strickland*, 466 U.S. at

20  691.  Although "[j]udicial scrutiny of counsel's performance must be

21  highly deferential," *id.* at 689, "we have found counsel to be

22  ineffective where he neither conducted a reasonable investigation

23  nor made a showing of strategic reasons for failing to do so,"

24  *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). "[A] lawyer

25  who fails adequately to investigate, and to introduce into evidence,

26  [evidence] that demonstrate[s] his client's factual innocence, or

27  that raise[s] sufficient doubt as to that question to undermine

28  confidence in the verdict, renders deficient performance." *Hart v.*

REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S
MOTION TO DISMISS ALL CLAIMS WITH PREJUDICE - 18

*Gomez,* 174 F.3d 1067, 1070 (9th Cir. 1999), *cert. denied,* 528 U.S. 929 (1999) (finding defense counsel's performance deficient because he failed to review or introduce at trial documents corroborating defense witness's testimony); *see also Lord v. Wood*, 184 F.3d 1083, 1096 (9th Cir. 1999), *cert. denied*, 528 U.S. 1198 (2000) (finding defense counsel's performance deficient because he failed to interview or call at trial three witnesses who had told police and investigators that they saw the victim alive a day after the defendant allegedly killed her); *Sanders,* 21 F.3d at 1457 (finding defense counsel's performance deficient because he failed to investigate or introduce at trial evidence implicating his client's brother).

As discussed by the appellate court, the submitted affidavits do not contain factual evidence that was not brought out at trial. On the contrary, the submitted statements confirmed that Petitioner was looking for money for more drugs, was intoxicated, and was behaving in an aggressive manner, to the point his family was telling him to get out or let them take him to the hospital. (Exhibit 15, *Affidavits*.) The affidavit of Elmer O'Connell, Sr., confirms that he spoke to trial counsel about the events of that evening. As found by the appellate court, it was reasonable for counsel to avoid putting family and friends on the stand to testify about Petitioner's character, as this would allow cross-examination by the prosecutor into Petitioner's past criminal history. (Exhibit 3 at 12-13.) Evidence from Petitioner's family that would support either a diminished capacity or intoxication defense was unnecessary, as evidenced by the psychologist's testimony, and other witness testimony that Petitioner was intoxicated the night of the

crime, as well jury instructions on both topics.   (Exhibit 15 at 191.)  Petitioner failed to show trial counsel's investigation and witness selection was unreasonable or caused prejudice.  Thus, **IT IS RECOMMENDED** habeas relief based on this claim **BE DENIED.**

As to all factual grounds involving Petitioner's ineffective assistance of counsel claim, the state court decision was neither contrary to nor an unreasonable application of clearly established law.  Accordingly, **IT IS RECOMMENDED** habeas relief on the ineffective assistance of counsel claim be **DENIED**.

**CLAIM TWO:  CUMULATIVE ERROR**

Petitioner asserts he is entitled to habeas relief based on cumulative error.  (Ct. Rec. 2 at 32.)  Petitioner asserts all of the claims asserted in his habeas petition constitute sufficient cumulative error to warrant habeas relief.

"Although no single alleged error may warrant habeas corpus relief, the cumulative effect of errors may deprive a petitioner of the due process right to a fair trial." *Jackson v. Brown,* 513 F.3d 1057, 1085 (9th Cir. 2008); *Karis v. Calderon*, 283 F.3d 1117, 1132 (9th Cir. 2002); *see also Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000) (noting cumulative error applies on habeas review); *Matlock v. Rose*, 731 F.2d 1236, 1244 (6th Cir. 1984), *cert. denied*, 470 U.S. 1050 (1989) ("[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair").  Such is not the case here.  Petitioner has not shown prejudicial error which would warrant the application of the doctrine.  The record does not reflect that Petitioner was deprived of a fair trial by the claimed errors.  Accordingly, **IT IS RECOMMENDED** this claim be

1  **DISMISSED WITH PREJUDICE.**

2      Having addressed all of Petitioner's claims, **IT IS RECOMMENDED**

3  Respondent's Motion to Dismiss with prejudice be **GRANTED.**

4  **OBJECTIONS**

5      Any party may object to a magistrate judge's proposed findings,

6  recommendations or report within ten (10) days following service

7  with a copy thereof.  Such party shall file written objections with

8  the Clerk of the Court and serve objections on all parties,

9  specifically identifying the portions to which objection is being

10  made, and the basis therefor.  Any response to the objection shall

11  be filed within ten (10) days after receipt of the objection.

12  Attention is directed to FED. R. CIV. P. 6(d), which adds additional

13  time after certain kinds of service.

14      A district judge will make a de novo determination of those

15  portions to which objection is made and may accept, reject, or

16  modify the magistrate judge's determination.  The judge need not

17  conduct a new hearing or hear arguments and may consider the

18  magistrate judge's record and make an independent determination

19  thereon.  The judge may, but is not required to, accept or consider

20  additional evidence, or may recommit the matter to the magistrate

21  judge with instructions. *United States v. Howell*, 231 F.3d 615, 621

22  (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72;

23  LMR 4, Local Rules for the Eastern District of Washington.

24      A magistrate judge's recommendation cannot be appealed to a

25  court of appeals; only the district judge's order or judgment can be

26  appealed.

27      The District Court Executive is directed to file this Report

28  and Recommendation and provide copies to Petitioner, counsel for

REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S
MOTION TO DISMISS ALL CLAIMS WITH PREJUDICE - 21

Defendant and the referring district judge.

DATED February 3, 2009.


S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE